**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**EL PASO DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | § | |
| | § | |
| | § | |
| **v.** | § | **No. EP-10-CR-2275-KC** |
| | § | |
| **JOSEPH D. SIMINGTON** | § | |

**ORDER**

On this day, the Court considered Defendant Joseph Simington's Motion to Dismiss

Indictment ("Defendant's Motion") and Government's Response in Opposition ("Government's

Response").  For the reasons set forth herein, Defendant's Motion is **DENIED** .

**I.     BACKGROUND**

    **A.     Procedural History**

On April 14, 2010, the Government filed a Complaint against Defendant Joseph D.

Simington, alleging that he violated Title 18, United States Code, § 2250 – Failure to Register or

Update a Registration by a Sexual Offender.  Section 2250 is the enforcement provision of the

Sex Offender Registration and Notification Act ("SORNA"), 42 U.S.C. §§ 16901 *et seq.* On

August 25, 2010, the Government filed the present Indictment which alleges as follows:

**COUNT ONE**
**(18 U.S.C. § 2250 - Failure to Register (Sex Offender)**

Beginning on or about December 15, 2009, and continuing until on or about
July 15, 2010, in the Western District of Texas and elsewhere, defendant JOSEPH D.
SIMINGTON  , being a person required to register under the Sex Offender Registration and
Notification Act by virtue of his conviction on or about August 28, 2000, in the First Judicial
District Court for Lewis and Clark County, Montana, for Sexual Assault  and having
traveled in interstate commerce, did knowingly fail to register and update a registration,

in violation of Title 18, United States Code, section 2250.

Defendant now moves to dismiss the Indictment.

### B.    Factual Background

The Government in its complaint alleges the following facts:

On August 28, 2000, Simington was convicted of Sexual Assault, a felony, in the Montana First Judicial District Court, Leis and Clark County.

On October 14, 2009, Simington signed a Pre-release Notification Form Texas Sex Offender Registration Program, CR 32. In this form, Simington acknowledged the following responsibilities as a registered sex offender: (a) not later than the 7th day before I move to a new residence in this sate or another state, I must report in person to my primary registration authority and inform that authority of my intended move. If my new residence is located in another state, not later than the 10th day after the date I arrive in the other state, I must register with the law enforcement agency that is identified by the Texas Department of Public Safety as the agency designated by that state to receive registration information; (b) by my failure to comply with any requirement imposed upon me by chapter 62, Code of Criminal Procedure, is a felony offense.

On October 14, 2009, Simington completed his initial registration with the El Paso Police Department. On October 28, 2009, November 25, 2009, and December 9, 2009, Simington updated his registration with the El Paso Police Department.

On April 5, 2010, Officer Ted Saiz of the El Paso Police Department conducted a compliance check of SIMINGTON at his registered address, 9133 Kernel #J1 in El Paso, Texas. Saiz spoke with SIMINGTON's sister, Sonia Morales. Morales stated that during the second week of December, 2009, she kicked SIMINGTON out of her home because he had been stealing from her. SIMINGTON told Morales that he was moving back to Montana and was going to report that fact to the El Paso Police Department.

Officer Saiz than spoke with Detective Chad Lawrence of the Helena Police Department in Helena, MT. Lawrence spoke with SIMINGTON's mother who stated that SIMINGTON had returned to Helena, MT and was staying at a local motel.

On April 14, 2010, contacted the Montana Department of Justice, Mary Jane West, and was advised that SIMINGTON is not currently registered in Montana.

> Since December 29, 2009, SIMINGTON has failed to maintain his sex offender registration.  SIMINGTON failed to notify the El Paso Police Department that he moved out of state and has failed to register as required in the State of Montana.  While out of compliance with sex offender registration requirements SIMINGTON traveled in interstate commerce.

Gov't's Criminal Compl. ("Complaint") 2

### C.    The Instant Motion

On October 1, 2010, Defendant filed the instant (Corrected) Motion, arguing that his Indictment violates numerous constitutional protections and that specifically, SORNA facially and as applied, violates the Commerce Clause, Due Process Clause, Mr Simington's right to travel, Non-Delegation Doctrine, Tenth Amendment, and Administrative Procedures Act.  *See generally* Def.'s Mot.  On October 7, 2010, the Government filed its Response, arguing that each of Defendant's objections is a misinterpretation of SORNA itself and the applicable constitutional standards that it is without merit, that SORNA is Constitutionally sound, and that many of Defendant's arguments are foreclosed by Fifth Circuit precedent.  *See generally* Gov't's Resp.

## II.    DISCUSSION

### A.    Standard

Federal Rule of Criminal Procedure 12(b)(2) states that "[a] party may raise by pretrial motion any defense, objection, or request that the court can determine without a trial of the general issue."  FED. R. CRIM. P. 12(b)(2); *United States v. Lankford*, 196 F.3d 563, 569 (5th Cir. 1999).  A party must raise before trial "a motion [that] alleged a defect in the indictment or information – but at any time while the case is pending, the court may hear a claim that the indictment or information fails to invoke the court's jurisdiction or to state an offense[.]"  FED. R. CRIM. P. 12(b)(3).

When challenging the constitutionality of a statute, a defendant may challenge the statute either on its face, or as the statute is applied to a defendant's particular circumstances.  *See United States v. Luna*, 165 F.3d 316, 319-22 (5th Cir. 1999) (analyzing the constitutionality of 18 U.S.C. § 922 both facially and as applied); *United States v. Robinson*, 119 F.3d 1205, 1213-15 (5th Cir. 1997) (holding the Hobbs Act to be constitutional both facially and as applied to the defendant). In the instant case, while Defendant never specifies whether he challenges SORNA facially or as applied, Defendant appears to generally pursue a facial challenge of SORNA's constitutionality because he does not apply the alleged facts of the instant case to his constitutional analyses of the statute for most of his arguments.  *See generally* Def.'s Mot.  Nevertheless, inasmuch as Defendant's Motion argues for the Court to review the constitutionality of SORNA "as applied," the Court will do so.

Outside of the First Amendment context, a plaintiff may only succeed in a facial challenge to the constitutionality of a statute by "establishing that no set of circumstances exists under which the Act would be valid." [1]  *Washington State Grange v. Washington State*

---

[1] S*ee also United States v. Salerno*, 481 U.S. 739, 745 (1987) ("A facial challenge to a legislative Act is, of course, the most difficult challenge to mount successfully, since the challenger must establish *that no set of circumstances exists* under which the Act would be valid.") (emphasis added).   This Court notes, however, that there is an ongoing disagreement among the justices of the United States Supreme Court regarding the validity of the *Salerno* standard to determine the facial validity of a legislative act.  *See Washington State Grange v. Washington State Republican Party*, 128 S.Ct. 1184, 1190 & n.6 (2008) (citing *Washington v. Glucksberg*, 521 U.S. 702, 739-40 & n.7).  In fact, several of the justices have called into question the validity of this portion of the *Salerno* opinion.  *Glucksberg*, 521 U.S. at 739-740, & n. 7 (Stevens, J., concurring in judgments) (citing *inter alia* Michael C. Dorf, *Facial Challenges to State and Federal Statutes*, 46 STAN. L. REV. 235, 239-240 (1994)).  The uncertainty surrounding the authority of the *Salerno* holding is significant.  *Chicago v. Morales*, 527 U.S. 41, 55 n. 22 (1999) (plurality opinion) (Stevens, J., Souter, J., and Ginsburg, J.) ("To the extent we have consistently articulated a clear standard for facial challenges, it is not the *Salerno* formulation, which has never been the decisive factor in any decision of this Court . . . .").

Most recently, in *Washington State Grange*, Justice Thomas, writing for the majority, recognized this criticism of *Salerno*.  *Washington State Grange*, 128

*Republican Party*, 128 S.Ct. 1184, 1190 & n.6 (2008) (citing *United States v. Salerno*, 481 U.S.

739, 745 (1987)); *Center for Individual Freedom v. Carmouche*, 449 F.3d 655, 662 (5th Cir.

2006).

### B.    SORNA

On July 27, 2006, Congress enacted the Adam Walsh Child Protection and Safety Act of

2006 ("Walsh Act"), Pub. L. No. 109-248, 120 Stat. 587 (2006).  The Act's stated goal is "to

protect the public from sex offenders and offenders against children" and to "establish a

comprehensive national system for the registration of those offenders."  42 U.S.C. § 16901.  Title

I of the Act – entitled the Sex Offender Registration and Notification Act ("SORNA") – creates a

national sex offender registry law and mandates the procedure for sex offenders to register under

the law.  *See* 42 U.S.C. §§ 16901 *et seq*.

### 1.  History

SORNA was preceded by the Jacob Wetterling Act ("Wetterling Act" ) in 1994,which is

codified at 42 U.S.C. § 14071.  That act provided federal funding to states which enacted sex

offender registration laws, commonly known as "Megan's Laws."  42 U.S.C. § 14071.  While the

Act primarily was regulatory in nature, similar to SORNA, the Wetterling Act also provided

criminal penalties of up to one year for a first offense, and up to ten years for subsequent

---

S.Ct. at 1190 & n.6.  The Court in *Washington State Grange* applied both the *Salerno* standard as well as the more deferential "plainly legitimate sweep" standard and held that the statute in question survived the facial challenge under either standard.  *Id.* at 1190.  Nevertheless, though the there may be uncertainty surrounding the authority of the *Salerno* holding as the proper analysis for considering facial challenges to the constitutionality of a statute, the Fifth Circuit has clearly stated  that the "no set of circumstances" standard applies to facial challenges outside of the First Amendment context.  *Center for Individual Freedom v. Carmouche*, 449 F.3d 655, 662 (5th Cir. 2006) (citing *Salerno*, 481 U.S. at 745).  Because this Court must follow Fifth Circuit precedent, the Court will apply the *Salerno* no-set-of-circumstances standard to the instant case.

offenses, for sex offenders who failed to register in any state they resided, worked or were a student.  *See*  42 U.S.C. §14072(I).

By 1996, the District of Columbia and each of the states enacted a Megan's Law.[2]  Texas initially enacted its program in 1991.  *See* Act of June 15, 1991, 72nd Leg., R.S., ch.572, Tex. Gen. Laws 2029-32 (now codified, *as amended*, at TEX. CODE CRIM. P. ANN. art. 62.001, *et seq.*); *Rodriguez v. State*, 93 S.W.3d 60, 66 (Tex. Crim. App. 2002).  Under the Texas Sexual Offender Registration Program (TSORP), persons with a reportable conviction or adjudication for certain sex-related offenses, such as Defendant's, must register with the local law enforcement authority where they reside or intend to reside for more than seven days.  TEX. CODE CRIM. P. ANN. art. 62.051 (Vernon 2006).  The Texas registry system also provides a sex offender must register any changes in employment within seven days, including gaining, losing or changing employment locations.  *Id.*

SORNA accomplishes its purpose of establishing a comprehensive national system for the registration of sex offenders by creating a new set of standards for the states' Megan's Laws and imposing registration obligations on sex offenders.  *See* 42 U.S.C. § 16901.  The SORNA reforms  were designed to "close potential gaps and loopholes under the old law, and generally strengthen the nationwide network of sex offender registration and notification programs." Department of Justice's National Guidelines for Sex Offender Registration and Notification, 72 Fed. Reg. 30210, 30211 (May 30, 2007).

2.  **The Registry**

SORNA is essentially divided into two parts:  (1) the requirements for each state to maintain a registry – the state component; (2) and the requirements for how sex offenders must

---

[2] For a complete list of all state Megan's Laws, see http://www.meganslaw.org/.

register – the individual component. *See United States v. Ditomasso*, 552 F. Supp. 2d 233, 236 (D. R.I. 2008). As part of its state registry component, SORNA defines the term "sex offender" and addresses the various tiers of sex offender status. 42 U.S.C. § 16911; 30 A.L.R. Fed. 2d 213. SORNA then requires that each jurisdiction maintain a jurisdiction-wide sex offender registry conforming to the law's requirements. 42 U.S.C. § 16912(a). A sex offender is required to provide for inclusion in the registry the sex offender's name and any aliases, social security number, and address; the name and address of any place where the sex offender is either an employee or a student; and the license plate number and a description of any vehicle owned or operated by the sex offender. 42 U.S.C. § 16914(a)(1)-(7). In addition, the jurisdiction in which the sex offender registers must also include in the registry, at a minimum, a physical description of the sex offender; the text of the provision of law defining the criminal offense for which the sex offender is registered; the sex offender's complete criminal history; a current photograph of the sex offender; fingerprints and palm prints; a DNA sample; and a photocopy of a valid driver's license or identification card issued to the sex offender by a jurisdiction. 42 U.S.C. § 16914(b)(1)-(8).

Each jurisdiction is also required to maintain a web site that makes "readily accessible to all jurisdictions and to the public, all information about each sex offender in the registry." 42 U.S.C. § 16918(a). The web site must be maintained in such a way as "will permit the public to obtain relevant information for each sex offender by a single query for any given zip code or geographic radius set by the user." *Id.* The website must also include links to sex offender and education resources; instructions on how to correct errors or dispute information; and a warning not to use the information on the web site to harass sex offenders whose information is made public by the web site. *Id.* § 16918(c)-(e). Information not required to be included on the web

site include the identity of any victims of a sex offense; the sex offender's Social Security

number; and any reference to arrests that did not result in a conviction. *Id.* § 16918(b).

3.   **Individual sex offender registration requirements.**

In addition to setting up a national sex offender registry law, SORNA mandates the

procedure for a sex offender registering under the Act.  This individual component is found in §

16913, which states:

> (a) In general
> A sex offender shall register, and keep the registration current, in
> each jurisdiction where the offender resides, where the offender is
> an employee, and where the offender is a student. For initial
> registration purposes only, a sex offender shall also register in the
> jurisdiction in which convicted if such jurisdiction is different from
> the jurisdiction of residence.
>
> (b) Initial registration
> The sex offender shall initially register--
>
>> **(1)** before completing a sentence of imprisonment with
>> respect to the offense giving rise to the registration
>> requirement; or
>>
>> **(2)** not later than 3 business days after being sentenced for
>> that offense, if the sex offender is not sentenced to a term of
>> imprisonment.
>
> (c) Keeping the registration current
>
> A sex offender shall, not later than 3 business days after each
> change of name, residence, employment, or student status, appear
> in person in at least 1 jurisdiction involved pursuant to subsection
> (a) of this section and inform that jurisdiction of all changes in the
> information required for that offender in the sex offender registry.
> That jurisdiction shall immediately provide that information to all
> other jurisdictions in which the offender is required to register.
>
> (d) Initial registration of sex offenders unable to comply with
> subsection (b) of this section

> The Attorney General shall have the authority to specify the applicability of the requirements of this subchapter to sex offenders convicted before July 27, 2006 or its implementation in a particular jurisdiction, and to prescribe rules for the registration of any such sex offenders and for other categories of sex offenders who are unable to comply with subsection (b) of this section.

> (e) State penalty for failure to comply

> Each jurisdiction, other than a Federally recognized Indian tribe, shall provide a criminal penalty that includes a maximum term of imprisonment that is greater than 1 year for the failure of a sex offender to comply with the requirements of this subchapter.

42 U.S.C. § 16913.

In addition to delineating the procedure for registering, SORNA requires the sex offender to appear in person and allow the jurisdiction to take a current photograph and verify the information in each registry on a periodic basis, the frequency depending on the sex offender's tiered offense status.  42 U.S.C. § 16916.  SORNA also requires different periods for which the sex offender must maintain full registration in the registry, the length for which again depending on the sex offender's tiered offense status.  *Id.* § 16915(a).  The full registration period may be reduced if the sex offender can show a "clean record" – i.e. no further convictions of felonies or sex crimes, and successful completion of parole, probation, supervised release and sex offender treatment.  *Id.* § 16915(b).

Shortly before a sex offender's release from custody, or immediately after the sex offender's sentencing if not in custody, an official from the jurisdiction is required to inform the sex offender of his duties under SORNA; require the sex offender to read and sign a form explaining the sex offender's duty to register; and ensure the sex offender is registered.  *Id.* § 16917(a).  If a sex offender cannot be registered in accordance with these requirements, the Attorney General shall prescribe rules for notification.  *Id.* § 16917(b).

4. **SORNA's enforcement provisions**

Sex offenders under particular circumstances who fail to comply with SORNA are

subject to SORNA's enforcement provision.  *See* 18 U.S.C. § 2250.  This provision states:

(a) In general.--Whoever--

(1) is required to register under the Sex Offender
Registration and Notification Act;

(2)(A) is a sex offender as defined for the purposes of the
Sex Offender Registration and Notification Act by reason
of a conviction under Federal law (including the Uniform
Code of Military Justice), the law of the District of
Columbia, Indian tribal law, or the law of any territory or
possession of the United States; or

(B) travels in interstate or foreign commerce, or enters or
leaves, or resides in, Indian country; and

(3) knowingly fails to register or update a registration as
required by the Sex Offender Registration and Notification
Act;

shall be fined under this title or imprisoned not more than 10 years,
or both.

18 U.S.C. § 2250.

On February 28, 2007, pursuant to its statutory directive to specify the applicability of

SORNA to sex offenders convicted before the enactment of SORNA, and who were unable to

comply with the initial registration requirements of 42 U.S.C. § 16913(b), the Attorney General

promulgated an Interim Rule declaring SORNA retroactive to all covered sex offenders ("Interim

Rule"). Department of Justice, Interim Rule with Request for Comments, 72 Fed. Reg. 8894,

8897 (Feb. 28, 2007) (codified at 28 C.F.R. § 72 (2007)). The comment period on the Interim

Rule ended April 30, 2007, resulting in the Final Interim Rule being implemented.

**C.    Discussion**

In his Motion, Defendant moves the Court to dismiss his Indictment because he argues that SORNA violates the Constitution and conflicts with other federal laws.  Def.'s Mot. 3. Specifically, Defendant argues (1) SORNA violates the Commerce Clause of the Constitution by punishing purely local intrastate activity that does not substantially affect interstate commerce; (2) SORNA violates procedural and substantive due process rights; (3) SORNA violates the Due Process Clause because there is no procedure to challenge registration or designation; (4) SORNA violates Mr. Simington's right to travel; (5) Congress impermissibly delegated to the Attorney General the decision whether SORNA would apply retroactively in violation of the Non- Delegation Doctrine; (6) .the Attorney General's regulation retroactively applying SORNA violates the Administrative Procedure Act; (7) SORNA violates the Tenth Amendment by impermissibly encroaching upon state power; and (8) the Indictment fails to inform Mr. Simington of what he did to make him guilty of the charge against him.  *Id.* at 4-27.  The Court will review each of Defendant's arguments *seriatim*.

### 1.    SORNA does not violate the Commerce Clause

Defendant first argues that SORNA's jurisdictional provision – 18 U.S.C. § 2250(a)(2)(A) – violates the Commerce Clause of the Constitution because it punishes purely local intrastate activity that does not substantially affect interstate commerce.  Def.'s Mot. 6.  Defendant is in error.

### a.  SORNA's enforcement provision – 18 U.S.C. § 2250

For Defendant to be convicted of violating § 2250, the government must prove three elements at trial:  (1) Defendant was required to register under SORNA – specifically 42 U.S.C. § 16913; (2)(a) Defendant is a sex offender whose prior conviction involved a violation of federal law (including the U.C.M.J.), or (2)(b) Defendant traveled in interstate, foreign commerce

or Indian country; and (3) Defendant knowingly failed to register or update his sex offender status as required by § 16913.  See 18 U.S.C. § 2250.  "Section 16913, in turn, imposes registration requirements upon each and every 'sex offender' in the United States."  *United States v. Thomas*, 534 F. Supp. 2d 912, 915 (N.D. Iowa 2008) (citing § 16913).

The Government alleges that Defendant being a person required to register under the Sex Offenders Registration and Notification Act, due to his 2000 conviction of Sexual Assault, did knowingly fail to register or update his registration as required by the Sex Offender Registration and Notification Act and did travel in interstate commerce.

In his Motion, Defendant states: "In *United States v. Whaley,* 577 F. 3d 254, 258-59 (5th Cir. 2009), the Fifth Circuit appears to hold that 42 U.S.C. §16913, and its associated penalty provision, 18 U.S.C. §2250, are valid exercises of Congressional authority under the Commerce Clause." Def's Mot. 5. Defendant's Commerce Clause arguments are foreclosed and this Court holds that the provisions of SORNA are a valid enactment of Congress's authority under the Commerce Clause and Necessary and Proper Clause of the Constitution.  *See* U.S. Const. art. I, § 8, cls. 3, 18.

### 2.   SORNA does not violate principles of due process

Defendant next argues that SORNA violates procedural and substantive due process rights.  Def.'s Mot. 9-16.  The Due Process Clause of the Constitution states that "[n]o person shall be . . . deprived of life, liberty, or property, without due process of law[.]"  U.S. CONST. amend. V.  Defendant argues that (1) SORNA provides no mechanism to challenge the registration or designation process, or have a hearing (2) Defendant did not receive actual notice of SORNA or its requirements; and ; (3) SORNA has not been implemented by any state, including Texas.  *Id.*

Defendant's challenges are foreclosed by Fifth Circuit precedent, specifically *United States v. Heth,* 596 F. 3d 255 (5th Cir. 2010) and *United States v. Whaley,* 577 F. 3d 254, 261-262 (5th Cir. 2009).  Furthermore, as noted by this Court in *United States v. Torres*, 573 F. Supp. 925, 941-942 (W.D. Texas 2008) this Court has previously rejected the argument put forth by Defendant concerning the inability to challenge convictions requiring registration.

**3.      SORNA's lack of procedure to challenge registration or designation**

Defendant argues first that SORNA violates his due process rights because SORNA does not provide for a hearing to assess Defendant's risk of recidivism or current dangerousness before imposing sex offender status, public notification on the Internet, and tier-level risk classifications.[3]  Def.'s Mot. 10. The Supreme Court has dismissed similar arguments when holding that a sex offender does not have a due-process right to challenge his inclusion in a sex offender registry by a pre-inclusion hearing when inclusion in the registry is based wholly on his conviction and not whether he is currently dangerous.  *See Conn. Dep't of Pub. Safety v. Doe*, 538 U.S. 1, 7 (2003).

Nevertheless, Defendant argues the lack of a hearing violates his right to procedural due process in the instant case because there is no procedural method for him to challenge the validity of the prior conviction before he is required to have his name published on the registries.  Def.'s Mot. 13.  This, in turn, could lead to a "substantive" due-process violation if Defendant is compelled to comply with registration even if he had not actually been convicted of an offense that Congress has listed as a qualifying "sex offense" in SORNA.  *Id.*

Because Defendant's prior conviction falls squarely within the category of persons required by Congress to register under SORNA, the statute is constitutional as applied to him.

---

[3] As Defendant points out, SORNA does provide for hearings in situations wholly unrelated to the instant case.

*Cf. Hinen*, 487 F. Supp. 2d at 754-55.  Therefore, Defendant lacks standing to challenge the constitutionality of the statute on these grounds "since he can allege no injury traceable to these alleged constitutional deficiencies."  *Id.* (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)).  Moreover, Defendant already had an opportunity to contest the validity of his underlying conviction in the criminal proceedings that led to the conviction.  Accordingly, Defendant's inclusion in the registry "turn[s] on . . . a fact that a convicted offender has already had a procedurally safeguarded opportunity to contest."  *Doe*, 538 U.S. at 7.

Despite his lack of standing, Defendant points out that the Fifth Circuit has held that a Texas statute violated an individual's due process rights when the individual was required to register as a sex offender without a hearing.  Def.'s Mot. 13 (citing *Coleman v. Dretke*, 395 F.3d 216, 223-24 (5th Cir. 2005)).  However, *Coleman* is inapposite to the instant facts in this respect because the Fifth Circuit in *Coleman* held specifically that "prisoners *who have not been convicted of a sex offense* have a liberty interest created by the Due Process Clause in freedom from sex offender classification and conditions."  *Coleman*, 395 F.3d at 223 (emphasis added). Similarly, other circuits that have found a deprivation of a liberty interest have expressly predicated their rulings on the fact that the defendant had not been convicted of a sex offense. *See Kirby v. Siegelman*, 195 F.3d 1285, 1292 (11th Cir. 1999) ("An inmate *who has never been convicted of a sex crime* is entitled to due process before the state declares him to be a sex offender.") (emphasis added);  *Neal v. Shimoda*, 131 F.3d 818, 831 (9th Cir. 1997) ("An inmate who has been convicted of a sex crime in a prior adversarial setting, whether as the result of a bench trial, jury trial, or plea agreement, has received the minimum protections required by due process.");  *Chambers v. Colo. Dep't of Corrections*, 205 F.3d 1237, 1243 (10th Cir. 2000) (Being labeled a sex offender "is the label replete with inchoate stigmatization – here based on bare

allegations which are vigorously denied *and which have never been tested* – which requires some procedural scrutiny.") (emphasis added).  Accordingly, the Court holds that the failure to provide Defendant with a hearing before requiring him to register under SORNA after he has been convicted of a sexual offense is not a deprivation of his right to procedural due process.

Furthermore, the Court holds that failure to hold a hearing for a convicted sex offender to challenge the prior conviction before requiring him or her to register under SORNA does not violate the sex offender's "substantive" right to due process.  The right to "substantive" due-process is "protection from arbitrary government action," and "only the most egregious official conduct" is arbitrary in the constitutional sense.  *Coleman*, 395 F.3d at 224 (citing *Sacramento v. Lewis*, 523 U.S. 833, 846 (1998)).  In *Coleman*, the Court held that sex offender treatment did not violate the defendant's "substantive" due process rights even when the treatment included psychotherapy that "was mandated, confrontational, structured, victim centered, focused on behaviors, *and confidentiality is not maintained*."[4]  *Id.*  (emphasis added).  While the Fifth Circuit held that such treatment was certainly intrusive, they did not find that the measures "shocked the conscience," nor did they see them to be "conduct intended to injure in some way unjustifiable by any government interest."  *Id.* at 224-25.  Similarly, the requirement that convicted sexual offenders be required to register and update their registrations with SORNA registries without being provided an additional hearing fails to "shock the conscience" of this Court.  Nor, given the Government's valid interest in protecting children from sex offenders, is registry without a hearing unjustified.  Accordingly, Defendant's "substantive" due process

---

[4] Treatment could also include "interventions with psychopharmacological agents, polygraph exams to determine sexual history, and use of penile plethysmographs to modify deviant sexual arousal and enhance appropriate sexual arousal.  *Id.* (internal quotes omitted).

argument with regard to a lack of hearing also fails.  *Cf. Doe v. Moore*, 410 F.3d 1337, 1345

(11th Cir. 2005) ("The circuit courts that have considered this substantive due process argument

regarding sex offender registries have upheld registration and publication requirements finding

no constitutional infirmities."); *Doe v. Tandeske*, 361 F.3d 594, 597 (9th Cir. 2004) (per curiam)

("Persons who have been convicted of serious sex offenses do not have a fundamental right to be

free from . . . registration and notification requirements . . . ."); *Gunderson v. Hvass*, 339 F.3d

639, 643 (8th Cir. 2003) (registration did not infringe the right to a presumption of innocence);

*Paul P. v. Verniero*, 170 F.3d 396, 404 (3d Cir. 1999) ("the state interest served by Megan's Law

. . . would suffice to justify the deprivation even if a fundamental right of the registrant's were

implicated.") (citation and internal quotation omitted).

### 4.    SORNA does not impermissibly impinge on Defendant's Right to Travel

Defendant next argues that the Constitution protect a fundamental right to "enter and to

leave another State" and that because SORNA is not narrowly tailored to serve a compelling

interest, SORNA violates Defendant's right to travel  Def.'s Mot. 16.  Defendant is once again in

error.

Defendant is correct in asserting that, as a fundamental right, a citizen's right to travel

among the states is protected from any government encroachment whatsoever "unless the

infringement is narrowly tailored to serving a compelling...interest." *Reno v. Flores*, 507 U.S.

292, 302 (1993). Def's Mot. 16  However, However, where a statute imposes a *reasonable*

burden or mere inconvenience on a person's right to travel, the statute does not violate any

constitutional right. *See Doe v. Moore*, 410 F.3d 1337, 1349 (11th Cir. 2005). The Fifth Circuit

stated in *Cramer v. Skinner*, 931 F.2d 1020, 1030-31 (5th Cir. 1991) that minor restrictions

which merely make interstate travel less convenient do not amount to the denial of a fundamental

constitutional right to travel and observing "If every infringement on interstate travel violates the traveler's fundamental constitutional rights, any governmental act that limits the ability to travel interstate, such as placing a traffic light before an interstate bridge, would raise a constitutional issue.. Under these circumstances, the statute will be upheld simply if it is supported by a rational basis. *See Jones v. Helms,* 452 U.S. 412, 425-26 (1981).

This Court finds that SORNA does not unreasonably penalize the Defendants right to travel.  Defendant may continue to travel interstate unimpeded but must comply with the requirement that he was specifically given notice of when he initialed, and signed a Pre-Release Notification Form, Texas Sex Offender Registration Program (CR-32.  2. Though this may be burdensome on the Defendant, it does not violate his liberty interests.  Furthermore, this Court finds that any such burden is reasonable to achieve the compelling interest of preventing future sex crimes. (See *United States. V. Shenandoah*, 595 F. 3d 151, 163 (3rd Cir. 2010) and is not an unconstitutional infringement on Defendant's right to travel.

     5.      **SORNA does not constitute an impermissible delegation of legislative authority to the executive branch**

Defendant next argues that Congress impermissibly delegated to the Attorney General the decision as to whether SORNA should be applied retroactively.  See 42 U.S.C. § 16913(d); Def.'s Mot. 19.  Defendant's argument is foreclosed by  *United States v. Whaley,* 577 F. 3d 254  (5th Cir. 2009).

     6.      **SORNA does not violate the Administrative Procedures Act**

Defendant next argues that the Attorney General's Regulation, 28 C.F.R. § 72.3, which purportedly applies SORNA retroactively, violated the Administrative Procedures Act ("APA"),

codified at 5 U.S.C. § 553, because it was promulgated without a thirty-day notice and comment period.  Def.'s Mot. 21.

The Administrative Procedure Act requires that "[g]eneral notice of proposed rulemaking shall be published in the Federal Register" "not less than 30 days before [the] effective date [of a substantive rule]" that allows "interested persons an opportunity to participate in the rule making[.]"  5 U.S.C. § 553(b)-(d).  An exception to the 30-day rule exists "when the agency for good cause finds (and incorporates the finding and a brief statement of reasons therefor in the rules issued) that notice and public procedure thereon are impracticable, unnecessary, or contrary to the public interest."  *Id.* § 553(b)(B).

The "good cause" exception to the notice and comment period of the APA should be "narrowly construed and only reluctantly countenanced."  *Utility Solid Waste Activities Group v. EPA*, 236 F.3d 749, 754 (D.C. Cir. 2001) (citation omitted).  The exception should not be used as an "escape clause;" rather "its use should be limited to emergency situations."  *Id.* (citation omitted).  "Failure to allow notice and comment, when required, is grounds for invalidating the rule."  *Nat'l Org. of Veterans' Advocates v. Sec'y of Veterans Affairs*, 260 F.3d 1365, 1375 (Fed. Cir. 2001) (citation omitted).

As part of the proposed Interim Rule, the Attorney General included the following language:

> The immediate effectiveness of this rule is necessary to eliminate any possible uncertainty about the applicability of the Act's requirements – and related means of enforcement, including criminal liability under 18 U.S.C. § 2250 for sex offenders who knowingly fail to register as required – to sex offenders whose predicate convictions predate the enactment of SORNA. Delay in the implementation of this rule would impede the effective registration of such sex offenders and would impair immediate efforts to protect the public from sex offenders who fail to register

> through prosecution and the imposition of criminal sanctions. The
> resulting practical dangers include the commission of additional
> sexual assaults and child sexual abuse or exploitation offenses by
> sex offenders that could have been prevented had local authorities
> and the community been aware of their presence, in addition to
> greater difficulty in apprehending perpetrators who have not been
> registered and tracked as provided by SORNA. This would thwart
> the legislative objective of "protect[ing] the public from sex
> offenders and offenders against children" by establishing "a
> comprehensive national system for the registration of those
> offenders," SORNA § 102, because a substantial class of sex
> offenders could evade the Act's registration requirements and
> enforcement mechanisms during the pendency of a proposed rule
> and delay in the effectiveness of a final rule.

Applicability of the Sex Offender Registration and Notification Act, 72 Fed. Reg. 8894, 8896-97 (Feb. 28, 2007).

While the Court does not find public comment on the Attorney General's Interim Rule "unnecessary," the Court does find that the reasons the Attorney General stated for foregoing a 30-day notice and comment period demonstrate that delay in promulgating the rule would be both impracticable and against the public interest.  First, according to the Attorney General's Manual, a thirty-day public notice and comment period is "impracticable" under the APA when "an agency finds that due and timely execution of its functions would be impeded by the notice otherwise required in [§553][.]"  *Utility Solid Waste Activities Group*, 236 F.3d at 754 (citing UNITED STATES DEPARTEMENT OF JUSTICE, ATTORNEY GENERAL'S MANUAL ON THE ADMINISTRATIVE PROCEDURE ACT ("ATTORNEY GENERAL'S MANUAL") 30-31 (1947)).  An example of such an "impracticable" situation is "when a safety investigation shows that a new safety rule must be put in place."  *Id.*  In the instant case, the Attorney General states that a 30-day notice period would "impede the effective registration of such sex offenders and would impair immediate efforts to protect the public from sex offenders who fail to register through prosecution and the imposition of criminal sanctions"  72 Fed. Reg. at 8896.  Given the safety

risks of allowing sex offenders to continue unregistered, even for a short period of time, the Court agrees that notice before implementation would be impracticable.

Moreover, the Attorney General also sufficiently demonstrates that delaying implementation would have been against the public interest.  Allowing for good cause in the public interest "connotes a situation in which the interest of the public would be defeated by any requirement of advance notice[.]"  *Utility Solid Waste Activities Group*, 236 F.3d at 754 (quoting ATTORNEY GENERAL'S MANUAL at 31).  As discussed above and as made explicit in 42 U.S.C. § 16901, sexual predators have been deemed by Congress to be a clear danger to society.  Allowing for a 30-day notice and comment period would potentially lead to "commission of additional sexual assaults and child sexual abuse or exploitation offenses by sex offenders that could have been prevented had local authorities and the community been aware of their presence, in addition to greater difficulty in apprehending perpetrators who have not been registered and tracked as provided by SORNA."  72 Fed. Reg. at 8896-97.  Such a situation would defeat the purpose of SORNA, which is to protect children against additional sex crimes.  *See* § 16901.  Accordingly, further delay would have been against the public interest.

The Court therefore holds that the Attorney General showed "good cause" in promulgating the Interim Rule without the initial thirty-day notice.[5]  In doing so, the Court is in accord with all other United States District Courts who have so far ruled on the issue.  *See United States v. Senogles*, No. 08-117 (DWF/RLE), 2008 WL 2971447, at*12 (D. Minn. Aug. 4, 2008); *United States v. David*, No. 1:08cr11, 2008 WL 2045827, at * 7-8 (W.D. N.C. April 18, 2008); *Utesch*, 2008 WL 656066, at *10-11; *United States v. Dixon*, No. 07-CR-72(01) RM, 2007 WL

---

[5] The Court also notes that the Department of Justice subsequently issued proposed guidelines that were open to the formal public notice and comment review period.  *See Gould*, 526 F. Supp. 2d at 546.

4553720, at *6 (N.D. Ind. Dec. 18, 2007); *Gould*, 526 F. Supp. 2d at 546; *Pitts*, 2007 WL

3353423, at * 8.

> **6.    SORNA does not violate the Tenth Amendment**

Defendant next argues that SORNA violates the Tenth Amendment because its

requirement that sex offenders register in individual state-created and state-run sex offense

registries is an unconstitutional encroachment of federal power on state sovereignty.  Def.'s Mot.

26-28.  Defendant is once again in error.

The Supreme Court has held that a private citizen, acting on his own behalf and not in an

official capacity or on behalf of the state citizenry, lacks standing to raise a Tenth Amendment

claim.  *See Tenn. Elec. Power Co. v. Tenn. Val. Auth.*, 306 U.S. 118, 145 (1939).  Assuming

standing, however, Defendant's argument nonetheless fails.  The Tenth Amendment states that

"[t]he powers not delegated to the United States by the Constitution, nor prohibited by it to the

States, are reserved by the States respectively, or to the people."  U.S. CONST. amend X.  The

Supreme Court has interpreted this Amendment to mean, in part, that "Congress cannot compel

States to enact or enforce a federal regulatory program."  *Printz v. United States*, 521 U.S. 898,

935 (1997) (citing *New York v. United States*, 505 U.S. 144 (1992)).  Indeed, "[t]he Federal

Government may neither issue directives requiring the States to address particular problems, nor

command the States' officers, or those of their political subdivisions, to administer or enforce a

federal regulatory program."  *Id.*  The Supreme Court ruled that "such commands are

fundamentally incompatible with our constitutional system of dual sovereignty."  *Id.*

Unfortunately for Defendant, the regulatory scheme enacted by Congress does not

command state officers or their political subdivisions to do anything.  As noted by more than a

dozen courts throughout the country in language similar to the following:

>SORNA does not require a state to change its law or procedures to comply with the federal sex offender registration program. Rather, a state can choose to implement SORNA or, in the alternative, choose not to implement SORNA and receive a reduction in federal funding. Pursuant to Congress' constitutionally authorized spending power, (U.S. Const.Art. I, § 8, cl.1), Congress "may attach conditions on the receipt of federal funds ... 'to further broad policy objectives by conditioning receipt of federal moneys upon compliance by the recipient with federal statutory and administrative directives.'" *South Dakota v. Dole*, 483 U.S. 203, 206 (1987) (quoting *Fullilove v. Klutznick*, 448 U.S. 448, 474 (1980)). The Tenth Amendment is not violated when the federal government encourages states to enact SORNA's provisions as a condition to receipt of federal funding.

*United States v. Zuniga*, No. 4:07CR3156, 2008 WL 2184118, at *19-20 (D. Neb. May 23, 2008) (additionally citing *United States v. Hacker*, No.8:07CR243, 2008 WL 312689, at *2 (D. Neb. Feb. 1, 2008); *Gould*, 526 F.Supp.2d at 549; *Cardenas*, 2007 WL 4245913, at *14)).

Indeed, the Court notes once again that in addition to the cases cited above, every other federal court addressing this issue and publishing its opinion to date has rejected Defendant's Tenth Amendment argument.  *See  United States v. Gagnon*, No. 08-cr-52-P-S, 2008 WL 3523181, at *5 (D. Me. Aug. 11, 2008); *Oakley*, 2008 WL 2986256, at *5; *Waybright*, 2008 WL 2380946, at *12; *United States v. Cochran*, No. CR-08-18-RAW, 2008 WL 2185427, at *2 (E.D. Okla. May 23, 2008); *United States v. Tong*, CR-08-20-RAW, 2008 WL 2186205, at *2 (E.D. Okla. May 23, 2008); *Ditomasso*, 552 F. Supp. 2d at 247; *United States v. Craft*, No. 4:07CR3168, 2008 WL 1882904, at *11 (D. Neb. April 23, 2008); *David*, 2008 WL 2045827, at *8-9; *Akers*, 2008 WL 9144493, at *4; *Utesch*, 2008 WL 656066, at *14-15; *United States v. Brown*, No. 07Cr485(HB); 2007 WL 4372829, at *4-6 (S.D.N.Y. Dec. 12, 2007); *Pitts*, 2007 WL 3353423, at *8-9.

7.     **SORNA does not violate the Tenth Amendment by impermissibly encroaching upon state power**

The Defendant next argues that SORNA violates the Tenth Amendment prohibition against the federal government commandeering state officials into enacting or administering federal law. Defendant's arguments have been addressed and foreclosed under *United States v. Whaley*, 577 F, 3d 254 (5th Cir. 2009)

Furthermore, Defendant's challenge to the SORNA regulation does not interfere with state law. Since the SORNA's provisions have been found to strengthen the states' enforcement provision, the law withstands Tenth Amendment scrutiny. *United States v. Gould*, 526 F. Supp. 2d at 549.

8.     **The Indictment does not fail to inform the defendant of the charges against him**

Defendant's final argument is that his Indictment is defective. Def.'s Mot. 25-27. Specifically, Defendant argues that the Indictment fails to inform Defendant of what he did to make him guilty of the charge against him, and thus trial on the Indictment would violate his constitutional rights. *Id.* The Court disagrees.

Rule 7 of the Federal Rules of Criminal Procedure states, in part, that an indictment "must be a plain, concise, and definite written statement of the essential facts constituting the offense charged and must be signed by an attorney for the government." FED. R. CRIM. P. 7(c)(1). When reviewing the sufficiency of an indictment, the Court must take the indictment's allegations as true. *United States v. Lucas*, 516 F.3d 316, 342 (5th Cir. 2008) (citing *United States v. Ratcliff*, 488 F.3d 639, 643 (5th Cir. 2007)). An indictment is sufficient if it "alleges every element of the crime charged and in such a way as to enable the accused to prepare his defense and to allow the

accused to invoke the double jeopardy clause in any subsequent proceeding." *Ratcliff*, 488 F.3d at 643 (citing *United States v. Bieganowski*, 313 F.3d 264, 285 (5th Cir. 2002)); *see also Lankford*, 196 F.3d at 569.

The Court finds no defect in Defendant's Indictment.  Each element of the crime is sufficiently pled and Defendant is apprised of the essential facts necessary to enable him to prepare his defense against the offense charged.  "It is not necessary for an indictment to go further and to allege in detail the factual proof that will be relied upon to support the charges." *United States v. Caldwell*, 302 F.3d 399 (5th Cir. 2002) (citation omitted).  If Defendant seeks to know the evidentiary details upon which the Indictment is predicated, he may move for a Bill of Particulars.

## III.    CONCLUSION

Defendant has failed to raise a constitutional defect in SORNA, either facially, or as applied.  Moreover, Defendant has failed to demonstrate that SORNA violates the Administrative Procedure Act.  Finally, the Court holds that Defendant's Indictment is sufficient.  Accordingly, Defendant's Motion (**Doc. No. 24**) is **DENIED**.

**SO ORDERED**.

**SIGNED** on this 14th  day of January, 2011.

*Kathleen Cardone*

KATHLEEN CARDONE
UNITED STATES DISTRICT JUDGE

.